The fourth case on our call of the docket today, November 9, 2010, is case number 109361, People v. Williams, Agenda No. 4. Counsel? Your Honors, Assistant Appellate Defender Levi Harris for the Appellant Michael Williams. May it please the Court, both parties and the Appellate Court below agree in this case that Michael Williams is entitled to credit against his sentence for the day of his sentencing. The only question is who should police that credit, the Circuit Court or the Department of Corrections? We are here to urge that the Circuit Court is the one responsible for policing that credit for four reasons. First, the statute makes it clear the General Assembly intended for the Trial Court to have that job. Second, the Circuit Court is in a better position to police this credit. Third, the best way to resolve ambiguities that exist now without creating new inconsistencies with other statutes is to adopt the rule we seek. And fourth, the double credit concern that the State proffers is a red herring. So respectfully, we request the Court reverse the Appellate Court and hold that the Circuit Court should credit all days from a defendant's arrest through his day of sentencing and that the Department of Corrections should be responsible for crediting the day after sentencing and every day thereafter. So first, Section 587B of the Sentencing Code calls for the rule that I just mentioned. That section states in pertinent part that the offender shall be given credit on a determinate sentence of imprisonment for time spent in custody. The second sentence goes on to say the Trial Court may give credit to the defendant for time spent in home detention, et cetera, et cetera. So when the second sentence has the Trial Court as the actor, it's understood that the first sentence, even though it is written in the passive voice so that the offender is receiving the action, the Trial Court is really still the actor in that sentence as well. Counsel, if the defendant's not held in custody before sentencing, is the day of sentencing counted as a part of a sentence? Your Honor, I don't believe that it would be if he were not in custody. You're saying if he's out on bond or something of that nature? Right, and the Court sentences him to incarceration. How does that work then? Is the Court supposed to give him one day's credit because he's been in there for sentencing or does IDOC pick that up? Well, Your Honor, I would assume that, let's say bond is revoked after the sentence is entered, that then yes, that would be, you know, if he's not free to leave at that point in time, that that would be a day that would be credited as a pre-sentence day. Well, there's no question in this case, I mean, that regardless, the defendant does get credit for that day. Yes. He either gets it from the Circuit Court or he gets it from the Department of Corrections. Other than the risk of double credit, is there a practical difference between these alternatives? Well, Your Honor, we believe that there is a practical difference. For one reason, ours just has an ease of administration that wouldn't necessarily exist in other cases. You know, in every case, you're going to know when a defendant's sentencing day is. So the Department of Corrections would know, would be able to presume that this day has already been taken care of and Circuit Courts would know to take care of it. So, yes, there's a practical application benefit to the rule that we seek. But the real important thing is that we make a rule one way or the other so the Circuit Court, the DOC knows, right? Well, Your Honor, we would say that a rule other than the one we seek would be better than no rule. However, we believe that our rule is the best rule for the reason I'll discuss. Let me move on. We've talked about 587B and how that makes clear the intent of the legislature. Even though that first sentence does not say the trial court is the one giving this credit, it's reasonable to presume that that's what they meant. Otherwise, you would have to believe that somehow the legislature intended for the DOC to be the actor only for the day of sentencing in the first part of 587B and then somehow for all the other days the trial court would be the actor. But beyond the statute itself, we believe that the Circuit Court is in a better position to credit this day of sentencing for three reasons. First of all, sentencing is a judicial function. Sentences must be certain by the time they get to the Department of Corrections so that they can be applied without resort to supplement. So the DOC doesn't have to go looking around doing its own investigations to find out how much pre-sentence credit a person gets. Even the directives that the state attaches to its brief indicate that the Department of Corrections, when in doubt, looks to the Circuit Court and to the minimus to see how much credit it's supposed to grant. That's in Appendix B, Paragraph 2E1. Moreover, this calculation, despite the state's argument, is not merely an administrative function. If it were, it's hard to understand why 587B, the part that is explicitly clear that the trial court is the actor, why would the legislature give the trial court this job that is just sort of mindless fill-in-the-blank busywork? We don't believe this is an administrative function. Besides the fact that sentencing is a judicial function, we also argue that this day of sentencing credit is not discretionary. Most of the credit that the Department of Corrections is charged with policing is discretionary credit. It's credit based on good conduct or whether somebody is completing a GED, different things that take place there. And we're constantly in the position of telling our clients, you know, your good time was taken away. There's nothing we can do about that. That's in DOC's hands. This is a different situation. This is not discretionary credit. This is mandatory credit. And it is not dependent on something that happens in the future. At the time of sentencing, everything that you need to know to grant this day is already there. So that gets to the third point, which is that the circuit court, at the time of sentencing, already has all that it needs to go ahead and credit this day so that whatever happens in the future, that day is taken care of. So there's the statute. There's the fact that the court is in the best position to grant this credit. Third, we argue that the best way to apply this credit or to guard this credit consistently throughout Illinois, throughout all the districts of the appellate court, and to apply it consistently with other statutes, is the rule that we seek. Right now, it's possible that an Illinois defendant could receive no day of credit sentencing. The circuit court could say, well, the Department of Corrections will take care of that. The Department of Corrections could just not credit it. And, you know, in some cases, it's going to be litigated. It could end up in the Supreme Court. In other cases, people may not take an appeal. Somebody may be sentenced on a misdemeanor case, say, to county custody and never even be in Department of Corrections custody for this credit to be dealt with. Counsel, since the statute isn't explicit, is it appropriate for us to consider the IDOC regulations? Well, Your Honor, first of all, we don't, we don't, the word regulations is something that we take issue with. We don't believe that these are regulations, if you're referring to the ones attached to the state's brief. No, certainly we would argue that the statute, since the statute is explicit, the statute is clear, you don't need to resort to anything else. The plain language of the statute makes evident what the legislature intended here. Let me go ahead and talk about those, and then I'll come back to this point, if that's okay. On the administrative directives, first of all, we don't believe that they're judicially noticeable. You know, these are not common knowledge. They're not facts capable of immediate and accurate demonstration by resort to an easily accessible source of indisputable accuracy. You know, we don't know necessarily where these directives were located. We don't know by what process they were created. We don't know how consistently they're applied. We don't know whether they'll be in effect tomorrow, and frankly, we don't know that they're in effect today. We certainly don't know they will still be in effect at the time that Mr. Williams gets out in 2012. So we don't believe that these are judicially noticeable. However, if the court wants to notice them, we still would argue that, to Justice Garmon's point, these were not properly promulgated rules because they did not go through notice and comment procedures. They were not in the Illinois Register. You know, these are not the types of rules and regulations that this court would typically defer to. The state mentions in its brief that this court should defer to these directives almost as a judicial decision because they are a reasonable construction of an ambiguous legislative provision and contemporaneous, consistent, long-continued, and in concurrence with legislative acquiescence. But we disagree with all those points, I'm sure not surprisingly. First of all, the statute, as I mentioned, is not ambiguous. And if it is, these directives certainly don't make it any more clear. Second, this is not a reasonable construction of the law. For instance, Appendix B, Paragraph 2D1 states that an inmate shall be given credit on a determinative sentence. You move on a little bit, and it says, and which was not credited to another sentence. Well, that and which was not credited to another sentence is not in the statute, and this court has already decided in People v. Robinson that that's a limiting condition. It's not going to read into that statute. So these directives are not a correct statement of the law, and that would lead us to wonder whether they're a correct statement of any other parts of the law or whether they're maybe not even still in effect. Besides that, there's no indication that these directives were contemporaneous with Section 587B of the sentencing code or that they're consistent or that they're long-continued. In fact, the only history information we have comes from the notations in the directives themselves saying that they were effective June 1, 2005 and October 1, 1996, respectively. There's been no showing that these directives are in effect now or certainly that they'll be in effect in the future when Mr. Williams is thinking about getting out. And there's been no showing that there's legislative acquiescence in this case or even that the legislature is aware of these directives. As I said, I'm not clear where they came from or how they were located. I was unable to locate them when I was preparing my opening brief. So I don't think this is something that we can presume that the General Assembly is aware of and has sort of signed off on by default. But even if the directives are judicially noticeable, even if they are rules, we still have problems with them because they never explicitly say that the Department of Corrections credits a defendant with his state of sentencing. And as I said before, the directives say that when in doubt, basically, look to the minimus. Look to the circuit court. That's where the Department of Corrections goes when it has a question and we believe that's the appropriate place for the state of sentencing credit. But perhaps most importantly about these directives is the fact that if this court issues the rule that we seek, there's not going to be any risk of double credit. Circuit courts are going to be on notice. They have to give the credit for the sentencing day. Department of Corrections will know, hey, this is the circuit court's job. We're not in a position to be messing with this day. So, you know, it's certainly not true that we're here. Isn't that true? Isn't the converse true? If we say IDOC does it, the circuit court, it's the same thing, isn't it? That part is true, Justice Carminer. That is correct. That, you know, if this court issues a clear rule, people are going to be on notice. And we obviously believe our rule is the better rule for the other reasons I've discussed. But, yes, on that point, and that's why either way I feel like the double credit presumption or situation is sort of a red herring. Nobody's here looking for, you know, a bargain for the client to get two days out of one. We're just here to make sure that he gets zero, that future Illinois defendants in a similar situation, which if they're convicted and sentenced, they're all going to be in the situation, that they're all taken care of as regards to this day of sentencing. If I could move back briefly to my point about consistency with other statutes, you know, if the court would adopt a contrary rule, in other words, that the DOC is in charge of the sentencing day and all days thereafter, that would create a new conflict that didn't exist before with Section 110.14 of the Code of Criminal Procedure, which provides a $5 per diem for defendants for each day they spend in pre-sentence custody that is applied against their fines. Now, long-standing law, I don't believe there's Supreme Court law on this, but long-standing in the appellate court, certainly, is that, you know, this credit applies for any day in which a defendant spent part of that day in custody, which includes the sentencing day. So a rule that the day of sentencing credit is the Department of Corrections' responsibility would mean that going forward, circuit courts are going to have to perform two calculations. Now, again, it's not necessarily higher math, but two calculations. One is, how many days has this guy been in custody for pre-sentence credit to send to the DOC? The other calculation is, how many days' credit does he get for per diem purposes against his fine? And, again, you know, it may seem like just adding it up, but the amount of litigation on these credit issues generally would seem to indicate that the simpler rule is going to be better because the more complicated it gets, the more calculations have to be performed, the more room there is for error and resultant litigation. The rule Mr. Williams is here to proffer is clear, it's consistent, it's easily administered, and it's unambiguous. So if there are other questions, I'm happy to address them. If not, I would just ask that the court adopt the rule Mr. Williams seeks, reverse the appellate court, and remain with instructions that the minimum must be corrected to reflect the total of 288 days served. Thank you, Your Honors. Mr. Chief Justice, may it please the Court, my name is Rita Kalachis. I'm an Assistant State's Attorney of Cook County, and I represent the people of the State of Illinois. There's no question, as defendant acknowledges, that he is entitled to credit for time spent in custody as a result of the offense for which the sentence was imposed. The narrow question before this Court today is how does the defendant get credit for that day when the trial court commits him to the Department's custody? The answer lies in the Uniform Code of Corrections. Because the Department receives legal custody of the offender on the day the minimus issues, it is the Department that begins counting his prison credit on that day. The minimus is a document that provides the legally significant date when custodial status in the Department begins. The minimus is the mechanism by which the circuit court transfers legal custody of the offender to the Department. And based on the information that the Department receives from the circuit court regarding the actual sentence imposed and credit for time he spent in custody prior to the issuance of the minimus, the result is that the Department is the final arbiter of how many days the defendant must spend in its legal custody. Under Section 585, which addresses the duty of the circuit court, after the circuit court pronounces sentence, the court renders judgment and then is duty-bound to commit the defendant to the custody of the sheriff or the Department of Corrections. That judgment is embodied in the minimus or order of commitment. The minimus or order of commitment thus transfers authority from the circuit court to the Department. Number two, under Section 587, two things happen. A sentence of imprisonment begins on the date that the defendant is received by the Department. And our position is that that is the date that he is legally received by the Department. And then, of course, the defendant shall be given credit for the time spent in custody as a result of the offense for which he was sentenced. And the third provision of the Uniform Code talks about the responsibilities of the Department itself. Under Section 363, the Department is mandated to calculate the defendant's early release date. Regarding administrative directives, why are they properly before this court? What they do is provide authority for the fact that the appellate courts have already acknowledged that the Department counts the day of the minimus issues as day one of the offender's prison sentence. And it shows a legitimate concern regarding the double credit quandary that several of the courts, including the court below, has addressed. Moreover, the Director of the Department issues the administrative directives to implement its mandate given to it by the Uniform Code, by the legislature, and that is namely to pass rules and regulations to calculate the early release of prisoners on account of their good conduct, as, again, as prescribed by statute. Per statutory mandate, Section 363 and 587B, the Department must calculate credit to ensure that the defendant gets credit for every single day he spends in custody in this case. And as a matter of fact, that not only includes pre-sentence credit, which it calculates, and credits against the defendant's sentence. Is there an ambiguity in the statute? I realize in our brief we said that there is an ambiguity. However, if you look at all of the statutory provisions together, they make it clear that the first day the defendant passes into the custody of the Department legally, whether he is there physically or not, he may still be in Cook County Jail or another location, he may still be in Cook County Jail, he may still be in Cook County Jail, he may still be in Cook County Jail, he may still be in Cook County Jail, legal custody passes with the document that is called the minimus or the order of commitment. And with that document, the Department of Correction starts its calculation of how many days the defendant is spending in its facilities. The administrative directives show how credits are calculated. There is a worksheet attached to the second directive, which is Appendix B. At Step 3, the IDOC employees are instructed to subtract the total jail credits from the sentence date. So that the sentence date is the date of imprisonment, and they subtract the total jail credits as provided by the circuit court from that date to arrive at a new custody date. And then from that new custody date, the department then adds the six-year sentences in this case to come up with the projected out date. And then, of course, during those six years, depending on how much time the defendant actually gets in good credit, he will be released in the department's discretion. The Uniform Code does not support the defendant's suggested policy scheme. The defendant cannot point to any statute that requires the circuit court to award credit for the day of sentencing. As a matter of fact, 587B is silent on that issue, regardless of the fact that in the very next subsection it talks about what the circuit court must do. 587B does not place any obligation on the circuit court to award credit for that day. What the defendant wants to do in this case is essentially to rewrite the statute to guard against the possibility of the circuit court saying that the department will not credit him with the day of the minimus issues. He wants to replace the custodial credit scheme with what he considers a better policy, with no statutory support for his claim. However, the department, we know, the department follows its administrative directives that require it to count the day of custody as, that require it to count the day custody transfers from the court to the department as day one of imprisonment. Furthermore, neither in this case nor in any other case the defendant has cited in this case, did the department fail to give credit to the defendant for the day he was sentenced? That has never been an issue. The minimus issued and the defendant's legal custody transferred to the department and the defendant has always gotten credit for that first day. Now, at this point, the defendant has made an artificial argument that perhaps it should be the circuit court who grants credit for the day he was sentenced. The defendant does not dispute that the department acquires legal custody over an offender when the court issues a minimus. He also does not dispute that the department routinely gives an offender custody credit for the day the department acquires legal custody over the offender. In fact, all of the cases the defendant has cited, both for and against this position, all assume that the department gives credit for the defendant's first day of legal custody in the department, i.e., the date the minimus issues. Thus, the defendant's motivation for asking this court to change the policy of the department is not only contrary to statute, it also does not have any realistic basis in practice. Defendant's $5 per diem analogy really has no merit in this case. We are basically talking about a $5 penalty. We are not talking about apples and oranges. If you look closely at the statute that addresses the $5 per diem, 110-14a, it provides that any person who is incarcerated on a bailable offense who does not supply bail and against whom a fine is levied on conviction of such offense shall be allowed a credit of $5 per day, so incarcerated, upon his application. The purpose of that statute is to ensure that the defendant is not punished for his inability to make bail. So once bail is revoked at the time of conviction, as the statute refers, the defendant is no longer at liberty to supply bail. So the operative date becomes the date of conviction, not the date he is sentenced, but the date he is convicted. And when bail is revoked, the reason for defendant being in custody is no longer his ability or inability to supply bail. So therefore, the purpose of the statute at conviction has already been satisfied. Thus, the $5 per diem approves only until defendant is convicted and not sentenced. And the entire argument that the defense has presented addresses a different time period than the pre- and post-sentencing credit that we are addressing in this case. Furthermore, the defendant has not or cannot establish that his policy reasons are valid to change what is already in practice in place and supported by statute. The whole purpose of correcting a minimus or the minimus, 288 days the defendant wants in this case, is to ensure that the offender is given the proper credit for each day he serves in custody as a result of the offense for which he was sentenced. A defendant has no right to have his minimus corrected if he receives proper credit for every single day he spends in custody as a result of that offense. Thus, in this case, the defendant has shown no injury and he is not entitled to a correction of the minimus. He has gotten the day, whether it's the day he was sentenced or it's the first day of his probation, he has received credit for that day. It does not entitle him to an additional credit of one day because he was also sentenced on one day. Your Honor, in conclusion, for these reasons and the reasons provided in our brief, the people respectfully ask this Court to reject the defendant's arguments and to affirm the appellate court's decision. Thank you. Thank you. Mr. Harris? Thank you, Your Honors. Just briefly, I want to obviously touch on some of these points. Council said that the department begins crediting or counting credit on the day that it receives legal custody of the defendant. And, you know, it said this also, the state said this in the brief, that, well, it just follows as the ninth of day that if that's the first day of his sentence, then they're going to credit him with that sentence. But it doesn't follow and, you know, an offender is going to spend part of his sentencing day in circuit court custody. So, you know, on that point, and obviously we say for other reasons the rule we seek is a superior rule, but on this point to say, well, this is the first day of his sentence, well, it's also the last day of his sentence when he's in the, you know, under the jurisdiction of the circuit court. The rule or a rule that the minimus is what sort of triggers the Department of Corrections to start calculating this custody, we believe would only lead to more confusion and more ambiguity. Suppose, for instance, the minimus were stayed for a certain amount of time. Sometimes that happens, just somebody's got a sick mother, somebody wants to say the last farewell to their kids, okay, fine, we'll stay the minute for a week. But, you know, what happens to that in between time? What happens if a defendant's going to be extradited to Iowa or to Indiana to stay in charge of someplace else after a conviction in Illinois? What happens if there's going to be another prosecution in a different county or a different division of Cook County, say, after conviction in another division? All these things, while the minimus issues or the minimus is stayed or the minimus is postdated, it's confusion. The simple rule is this is the day he was sentenced. The circuit court is already taking care of the State Department of Corrections. You don't need to worry about it. Everything after that is a different story. The state has repeated again, as it said in its brief, that under the law, the circuit court is duty-bound to deliver the offender to either the sheriff or to the Department of Corrections. But, as I just mentioned with the state of the minimus situation, that doesn't have to take place immediately. It's not as if, you know, come on, let's get in the car, we're going to the Department of Corrections as soon as the gamble comes down. These are things that take time, and that's why we believe this day of sentencing is a good marker. Counsel also said the Department of Corrections is the final arbiter of credit that it grants, and we believe that's one of the problems. The DOC is not the arbiter of this. This is not an administrative right. This is not an administrative right that a defendant should have to appeal to an administrative body to get a remedy for. This is a statutory right. This is a legal right that he has that should be guarded by the judiciary. We disagree that there's anything that Section 363 of the Sentencing Code has to say about this. You know, that's about good conduct credit. It's about what percentage of a sentence an individual should be. You know, the state has attached a worksheet to its brief along with these directives to show, well, this is what the Department of Corrections uses to make these calculations. However, it didn't supply the worksheet in this case to prove that this particular defendant was getting this day. The directives, even as I said, even if they're noticeable, even if they are rules, there's no guarantee that these directives are going to be the same tomorrow. You understand we just got a new director of the Department of Prisons in the state of Illinois. I would assume that that new director could issue new directives that could change how all of this is done. And we don't believe that this day and the right to this day should be contingent upon the whims of a director. The Seventh Circuit case that I cited, and I understand it's a different jurisdiction, but I think it's good language to explain the difference between the two. If an administrator is freed to disregard his own words, the prisoner has nothing of substance and therefore neither liberty nor property. This is something that prisoners cannot rely on. Well, the Department of Corrections will take care of this. And suppose it gets to be a week before Mr. Williams is scheduled to get out and this day somehow disappears while the Department of Corrections has taken away, has changed the directives. At that point, it's obviously too late to come in a direct appeal. That's going to be finished. And once he's out of Department of Corrections' custody, he's not entitled to file a post-conviction petition. So this is a situation that needs a remedy now. If I could move on just briefly. We don't believe the statute is ambiguous, 587B, to any extent that it is. We believe that if you read the statute as a whole, both sentences reading together and the specific, the more specific sentence is obviously sentence two, the trial board is supposed to give this credit. We believe that the rules of statutory construction make it pretty clear that even if this is an ambiguous statute, it's not rocket science to figure out who the General Assembly intended to be doing this job in 587B. Counsel also mentioned that the Department has never failed in any case that she knows of and indeed in any case that I necessarily was aware of to give this credit. Four days ago in the First District of the Appellate Court, there was a Rule 23 case cited where, excuse me, decided where that was the issue. They found that, well, yes, Department of Corrections usually does this. However, it didn't do this in this case, and that is Golostino, and I have copies of it for your honors and for counsel if you're interested in it. I understand it's not precedential, but it is an instance where Department of Corrections presumably was going to do this and it didn't. I guess that's all I have, your honors, unless you have other questions. Thank you, Mr. Harris. Thank you. Case number 109361, People v. Williams, is taken under advisement as agenda number four.